**FILED**
**Feb 10, 2020**
**01:53 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **WILLIE WRIGHT,** | ) | **Docket No. 2019-08-0723** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 48606-2019** |
| **MEMPHIS LIGHT, GAS & WATER,** | ) | |
| **Employer.** | ) | **Judge Deana Seymour** |
| | ) | |

## EXPEDITED HEARING ORDER

Willie Wright suffers from severe arthritis throughout his body, which he claims resulted from lead exposure while working at Memphis Light, Gas & Water's salvage shop. MLGW insists that Mr. Wright did not prove his condition resulted from lead exposure or arose primarily out of his employment.[1] The Court convened an Expedited Hearing on January 24, 2020, to determine Mr. Wright's entitlement to medical benefits for his arthritic condition. The Court holds Mr. Wright would not likely prevail at a hearing on the merits regarding his claim for medical benefits at this time.

### History of Claim

Mr. Wright worked for MLGW for nearly thirty years. From 1985 to 1991, he worked at MLGW's salvage shop. Mr. Wright claimed MLGW did not provide proper training, protective clothing or equipment during that period. On July 9, 2019, five years after retiring from MLGW, he filed a Petition for Benefit Determination claiming lead exposure caused his severe arthritis.

According to his medical records, Mr. Wright sustained multiple injuries to his knees, shoulders, and back at work and after he retired. Diagnostic tests performed in 2014 indicated very severe osteoarthritis in Mr. Wright's right knee. He was also diagnosed with osteoarthritis in his left knee in 2016. In 2018, Mr. Wright was diagnosed

---

[1] MLGW raised statute-of-limitations and notice defenses in the Dispute Certification Notice but did not argue them during the hearing. Therefore, the Court will not address them in this order.

with severe degenerative joint disease in his knees and hands, and bilateral rotator cuff arthropathy.

Mr. Wright expressed concerns about lead exposure to his primary care provider in December 2018 and July 2019. However, her records do not indicate any lead testing. Mr. Wright testified he went to New York's Mount Sinai Hospital for lead testing. He also advised that he started treatment for lead exposure at Cleveland Clinic. However, he did not introduce any medical records from those providers.

During cross-examination, Mr. Wright admitted he lived in an older house and had fillings in his teeth but had not tested either for lead. He acknowledged residual problems from his work injuries to his knees and back and the injuries to his knees, back, and shoulders he sustained after his retirement. Mr. Wright agreed that his age made it harder to recover from injuries.

Chet Kibble offered expert testimony for Mr. Wright. A twenty-six-year employee for MLGW, he worked as MLGW's environmental coordinator for twelve years during the period Mr. Wright worked in the salvage shop. He currently serves as the chairman for the Memphis and Shelby County Lead Safe Commission, where he and his team partner with the Environmental Protection Agency to conduct lead studies. Although he admitted having no medical or engineering training, he was qualified as a lead expert.[2]

Mr. Kibble testified that he spoke to managers at MLGW about lead problems in the salvage shop. He observed construction crews salvaging pipes and cables that contained lead waste above safe levels. In the salvage shop, employees stripped lead cables without proper training and protective equipment. The Environmental Protection Agency cited and fined MLGW for these violations. MLGW performed a major clean-up at the salvage shop. However, this clean-up occurred after Mr. Hayes left the salvage shop.

On cross-examination, Mr. Kibble indicated that he knew Mr. Wright worked in the salvage shop and observed him there. However, he admitted that he did not know about Mr. Wright's injuries to his knees, shoulders and back. Mr. Kibble admitted to filing his own claim for lead exposure against MLGW.

MLGW countered that Mr. Wright introduced no evidence of lead exposure relating his arthritis to his employment at MLGW. It contended that Mr. Wright's arthritis stemmed from his prior injuries and age.

---

[2] The Court sustained MLGW's objection to Mr. Kibble testifying about lead's effects on the body due to his lack of medical training.

## Findings of Fact and Conclusions of Law

At an Expedited Hearing, Mr. Wright must provide sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The essential question is whether Mr. Wright's employment primarily caused his arthritic condition. To prevail, Mr. Wright must establish that his arthritic condition arose primarily out of his exposure to lead in the course and scope of his employment with MLGW. To do so, Mr. Wright must prove that his employment contributed more than fifty percent in causing his condition considering all causes. *See* Tenn. Code Ann. § 50-6-102(14)(B). Medical evidence is generally required to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Berdnik v. Fairfield Glade Com'ty Club,* 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *10-11 (May 18, 2017).

Applying these principles to the facts of this case, the Court holds Mr. Wright failed to satisfy his burden. Although Mr. Wright and Mr. Kibble testified that Mr. Wright worked in an area containing lead materials, none of his medical records supports a conclusion that lead exposure caused his arthritis. Mr. Wright failed to provide the medical records from his lead-testing at Mount Sinai Hospital or the Cleveland Clinic. None of the records in evidence relates Mr. Wright's arthritic condition to lead exposure.

Due to lack of medical proof, the Court finds Mr. Wright has not come forward with sufficient evidence to show he is likely to prevail at a hearing on the merits of his claim. Therefore, the Court denies his request for medical benefits at this time.

IT IS, THEREFORE, ORDERED as follows:

1. Mr. Wright's request for medical benefits is denied.

2. This case is set for a telephonic Status Hearing on **April 13, 2020, at 9:30 a.m. Central Time.** You must call toll-free at 866-943-0014 to participate in the hearing.

ENTERED February 10, 2020.

_____
**Judge Deana C. Seymour**
**Court of Workers' Compensation Claims**

3

APPENDIX

Technical record:

TR1. Petition for Benefit Determination
TR2. Dispute Certification Notice
TR3. Request for Expedited Hearing, with Mr. Wright's affidavit
TR4. Employer's Response to Expedited Hearing
TR5. Employer's Medical Record Designation
TR6. Employer's Exhibit List
TR7. Employer's Witness List


Exhibits:

1. Employer's Medical Record Designation
2. Approval of Workers' Compensation Settlement and Mediated Settlement Agreement related to a March 3, 2014 injury
3. Approval of Workers' Compensation Settlement and Mediated Settlement Agreement related to a June 2, 2013 injury

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on February 10, 2020.

| Name | Certified Mail | U.S. Mail | Email | Service sent to: |
|---|---|---|---|---|
| Willie Wright, Employee | X | X | | 1333 Timothy Drive Memphis, TN 38116 |
| Sean Hunt, Employer's Attorney | | | X | sean@thehuntfirm.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

5



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation

www.tn.gov/workforce/injuries-at-work/

wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*